# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

KENNETH R. SCHENA,

                          Plaintiff,

-vs-                                             Case No.  2:05-cv-249-FtM-29SPC

METROPOLITAN LIFE RETIREMENT PLAN
FOR UNITED STATES EMPLOYEES;
METROPOLITAN LIFE INSURANCE
COMPANY; NEW ENGLAND LIFE
INSURANCE COMPANY RETIREMENT PLAN
& TRUST; METROPOLITAN LIFE INSURANCE
COMPANY,

                          Defendants.

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

_____This matter comes before the Court on the Defendants Metropolitan Life Retirement Plan for United States Employees, Metropolitan Life Insurance Company, New England Insurance Company Retirement Plan & Trust, Metropolitan Life Insurance Company's (hereinafter Defendant or Met Life) Motion for Summary Judgment (Doc. # 41) filed on April 6, 2006.

## FACTS

      The Plaintiff Kenneth Schena commenced his employment with MetLife in February of 1999. Prior to his employment with MetLife, Schena worked as a sales agent for New England Life in the Naples, Florida area from 1982 through 1990.  In 1990, Schena was promoted to sales manager at that New England life office.  In 1996, MetLife acquired New England Life.

After the purchase of New England Life by MetLife, Schena sent a letter to MetLife suggesting that it would make economic sense to combine his New England Life office and the Naples MetLife office.  At that time, MetLife did not respond to Schena's proposal.  Later in 1998, a Met Life employ forwarded Schena's name to MetLife's Regional Vice President, William Skidmore, regarding Schena managing the Met Life Naples office.  Skidmore, Jack Welch, also with Met Life, and Schena met to discuss Schena's intra-company transfer from New England to MetLife. In late 1998 Schena traveled to Tampa and met with Skidmore, Welch and Joel Martin, MetLife's Atlantic Regional Vice President.  Schena claims that Welch and Skidmore verbally assured him that all of his time with New England would transfer over to MetLife.  In response to his concerns, a MetLife pension expert was called.  Schena states that the pension expert assured him at that time that he would receive credit for all of his time served with New England Life after he had been employed with MetLife for a period of one year.

On December 20, 1998, Schena signed an intra-company  Memorandum of Understanding (Ar. # 24).  Paragraph four (4) of the Memorandum of Understanding states "[y]ou will be given full credit at MetLife for all of your years of New England Life service." (Ar. # 24 ¶ 4).  However, the Memorandum also included a disclaimer which reads as follows:

> I have read this Intra-Company Transfer Memorandum of Understanding. I acknowledge and accept that changes (outlined in general terms in this document) will apply to me if my request for Intra-company transfer is granted by MetLife and New England Life.  If there is any conflict between information provided in this memorandum about MetLife or New England Life polices, compensation, arrangements or benefits, and any publications issued by those companies describing the policies, compensation arrangements or plans, I understand that the terms and conditions outlined in the publications issued by the companies will be controlling, and will not be deemed modified by any information set forth in this memorandum.

(Ar. # 24) (all caps in original).

On February 5, 1999, Schena received a formal offer of employment from MetLife, which he accepted in writing on February 8, 1999. Schena served as the managing agent for the Naples office until January 2002 when he was replaced by Adrienne Hayes-Jones. At that time, Schena accepted MetLife's offer to remain with the company as a sales representative.

Some time in March 2002 Schena began discussions with Judith Pellinger, an employee in MetLife's benefits department, as to whether his time with New England Life would apply to his MetLife benefits. At the time of his retirement, Schena was a member in the following pension Plans related to his employment at New England Life: (1) the New England Agents Retirement Plan and Trust (Ar. Ex. 9); (2) the New England Agents' Deferred Compensation Plan and Trust (Ar. Ex. 10); and (3) the New England Agency Employees Retirement Plan and Trust (Ar. Ex. 2).

On March 22, 2002, and again on April 12, 2002, Pellinger corresponded with Schena informing him that Met Life would not use his New England Life years of service when calculating his MetLife pension benefits. On May 31, 2002, Schena retired from MetLife. On June 12, 2002, Schena appealed the decision denying his New England Life years of service to Robert Benmosche, CEO of MetLife. James Heston, Vice President and Plan Administrator denied his appeal on July 29, 2002. In response to MetLife's denial, Schena filed the instant suit pursuant to Employee Retirement Income Security Act of 1974 (ERISA) 29 U.S.C. § 1001 *et seq* with this Court.

## STANDARD OF REVIEW

ERISA claims are subject to three standards of review. Yochum v. Barnett Banks, Inc. Severance Pay Plan, 234 F.3d 541, 543 (11th Cir. 2000). A brief discussion of those standards is appropriate here. In Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 109 S. Ct. 948, 103 L.

Ed 2d 80 (1984), the U.S. Supreme Court held that ERISA claims should be reviewed *de novo* unless the plan's administrator was also in a position to deny a claim for the benefits.  <u>Brown v. Blue Cross Blue Shield of Alabama, Inc.</u>, 898 F.2d 1556, 1559 (11th Cir. 1990).  In circumstances where the plan's administrator also has the discretion to deny the claim, the Court should review the plan administrators or fiduciary's decision under the "arbitrary and capricious" standard.  <u>Yochum</u>, 234 F.3d at 544.  "Finally, if the plan grants the fiduciary or administrator discretion, but the court finds a conflict of interest between the fiduciary or administrator and the company, a 'heighten arbitrary and capricious' standard applies."  <u>Id.</u>  If the Court finds such a conflict of interest, "the court will consider this conflict in its analysis."  <u>Id</u>.  The Eleventh Circuit Court of Appeals has held when an insurance company is the ERISA plan administrator and also responsible for paying claims that "a strong conflict of interest exists making application of the heightened arbitrary and capricious standard appropriate."[1]  <u>Brown v. Bellsouth Telecommunications Inc.</u>, 73 F. Supp. 2d 1308, 1319 (M.D. Fla. 1999) (citing <u>Brown v. Blue Cross Blue Shield of Alabama</u>, 898 F.2d at 1562)).

---

[1]  When considering a conflict of interest the Eleventh Circuit has held:  The beneficiary need only show that the fiduciary allowed himself to be placed in a position where his personal interest might conflict with the interest of the beneficiary.  A conflicted fiduciary may favor, consciously or unconsciously its interest over the interest of the plan beneficiaries.  The standard of review for a fiduciary operating under a conflict of interest remains arbitrary and capricious with a significantly diminished degree of deference.  Although [e]ven a conflicted fiduciary should receive deference when it demonstrates that it is exercising discretion among choices which reasonably may be considered to be in the interest of the participants and beneficiaries, the burden shifts to the  fiduciary to prove that is interpretation of plan provisions committed to its discretion was not tainted by self-interest.  <u>Adams v. Thiokol Corp.</u>, 231 F.3d 837, 842 (11th Cir. 2000) (citing <u>Brown v. Blue Cross Blue Shield of Alabama, Inc.</u>, 898 F.2d 1556, 1568 (11th Cir. 1990)).  If the fiduciary succeeds in proving this burden, the opposing party 'may still succeed if the action is arbitrary and capricious by other measures.'  <u>Adams</u>, 231 F.3d at 842.

Regardless of whether the regular or heightened arbitrary and capricious review applies, the Court must first review *de novo* the administrator's decision to determine whether the decision was right or wrong. Williams v Bellsouth Telecommunication, Inc., 373 F.3d 1132, 1138 (11th Cir. 2005); HCA Health Servs. of Georgia, Inc. v. Employers Health Ins. Co., 240 F.3d 982, 993 (11th Cir. 2001) (citing Godfrey v. Bell Telecommunications, Inc., 89 F.3d 755, 758 (11th Cir. 1996) (holding that a *de novo* review must first be held to decide if the administrator's determination was wrong). When assessing the correctness of the administrator's decision the Court's inquiry is limited to the administrative record known to the administrator when the decision to deny the LTD benefits was made. Jett v. Blue Cross and Blue Shield of Alabama, Inc., 890 F.2d 1137, 1139 (11th Cir. 1989). Only after the *de novo* review and the Court determines that the administrator is wrong, does it then look for a conflict of interest. Williams, 373 F.3d at 1138; HCA Health Servs. of Georgia, Inc., 240 F.3d at 993.

If the Court determines that the administrators decision was wrong, the Court must then decide whether the claimant has proposed a reasonable interpretation of the plan. Lee v. Blue Cross Blue Shield of Alabama, 10 F.3d 1547, 1550 (11th Cir. 1994). Assuming the claimant's interpretation is reasonable, the Court then turns to whether or not the administrator's wrong interpretation of the plan is nonetheless reasonable. HCA Health Servs. of Georgia, 240 F.3d at 994.
A plan administrator's wrong but reasonable interpretation of the plan is entitled to deference, even in light of the claimant's reasonable interpretation, unless the administrator suffers from a conflict of interest. Id. The Plaintiff's reasonable interpretation does not trump the administrator's wrong interpretation. Id. The principles governing the administrator's decision are similar to the principles

of trust law which state that the administrator's interpretation will not be disturbed if it is reasonable. Firestone Tire and Rubber Co., 489 U.S. at 110-111.

## DISCUSSION

_____On November 17, 2005, Schena filed his Amended Complaint (Doc. # 24) alleging (1) all of his time with New England Life should be calculated into his MetLife benefits because he relied on MetLife's promises and verbal assurances; (2) MetLife failed to discharge its fiduciary duty under ERISA as required by 29 U.S.C. § 1104(a)(1); (3) MetLife breached its duty to disclose pursuant to 29 U.S.C. §§ 1022(a) and 1024(b) by failing to provide Schena with a copy of the plan or a copy of the summary plan description (SPD) while he was employed at MetLife; and (4) MetLife failed to oversee the fiduciary and thus is responsible for the fiduciaries failure to properly calculate his time at New England Life in his MetLife benefits.

The Defendant argues that summary judgement is appropriate because ERISA claims are not subject to promissary/equitable estopple. The Defendant asserts that the Plaintiff's claim for breach of fiduciary duty fails because he has an available adequate remedy under ERISA. Next, the Defendant maintains the Plaintiff's claim that MetLife breached its duty to disclose fails because the SPD does not conflict with the Plan, and further the Plaintiff never requested that copies of the Plan or SPD be provided. Finally, the Defendant contends that the Plaintiff's fourth count fails because the Amended Complaint contains no specific allegations or proof that MetLife knowingly participated in breaching its fiduciary duty.

### (1) Count I: Whether Equitable Estopple Applies to Schena's Case

The Plaintiff claims that estopple applies to the instant case because he relied on the verbal assurances of MetLife officials that his years of service at New England Life would be included in his

pension benefit calculation.  Additionally, the Plaintiff asserts that he was never given a copy of the SPD or the Plan until after he had left the company and therefore all he had to rely on was the promises of MetLife and the Memorandum of Understanding.

The Defendant states that estopple is not proper under ERISA and further that the Plaintiff never asked for a copy of the Plan or the SPD.  The Defendants claim that the Plan including amendments which became operational under the Plan on January 1, 2001, controls whether or not Schena's New England Life service applies to his MetLife benefits.

### (a) The Defendant's Oral Promises

Notwithstanding the prohibition against oral modifications to ERISA plans, the Eleventh Circuit has created a very narrow common law doctrine for equitable estoppel under ERISA when "(1) the provisions of the plan at issue are ambiguous, and (2) representations are made which constitute an oral interpretation of the ambiguity." Glass v. United of Omaha Life Insurance Co., 33 F.3d 1341, 1347 (11th Cir. 1994).  Under the terms of the MetLife Plan "the period of employment completed by the Employee with the Employer, commencing on the Employee's date of employment and ending on the earliest of (I) the date of Termination of Employment, (ii) the date of retirement, (iii) the date of death." (Ar. Ex. 1 at 1.15).  An employment Year of Service is defined as a 12-month period starting on the date of employment and on each anniversary thereafter including periods of . . . (vi) employment with New England Life Insurance Company or New England Mutual Life Insurance Company prior to January 1, 2001. (Ar. Exhibit 1 at 1.15).

Credited Service is defined by the MetLife Plan as "[s]ervice which is included for purposes of determining the amount of Normal Retirement Benefit." (Ar. Ex. 1 at 1.16).  The Plan continues that "[o]ne year of Credited Service will be given for each Employment Year of Service . . . during

which an Employee is classified as an Eligible Employee, before the Normal Retirement Date. (Ar. Ex. 1 at 1.16). "Credited Service shall include any credited service, which a Participant had accrued under the New England Life Insurance Company Retirement Plan and Trust ('New England Plan') as of December 31, 2000 (attached as Appendix A). (Ar. Ex. 1 at 1.16). "Credited Service also includes any credited service after December 31, 2000, which a participant would have accrued under the terms and provisions of the New England Plan (in effect on December 31, 2000) if the Participant became totally disabled on or before December 31, 2000. (Ar. Ex. 1 at 1.16). It is undisputed that the Plaintiff was never a participant in the New England Life Plan. Therefore, the Defendant argues that none of the provisions of the MetLife Plan that include certain service with New England Life as Credited Service for the proposes of determining the individual's benefit under the MetLife Plan would apply to Schena.

In the instant case, the alleged oral promises made by MetLife's representatives were made during preliminary discussions regarding the Plaintiff's intent to transfer from New England Life to MetLife. They were not an attempt to interpret any alleged ambiguity in the terms of the SPD or the Plan itself. The Plaintiff argues that Skidmore, Welch and the head of MetLife's pension benefit program all stated that his years of service at New England would be counted in his MetLife benefit after one year of service with MetLife. He states that they showed him documents including an inter-company transfer letter which the Plaintiff believes confirmed his belief that his years of Service at New England Life would be calculated into his MetLife benefits. However, none of the MetLife representations were made to clarify any ambiguity in the terms of the Plan.

Although the Plaintiff states that he relied on the alleged MetLife representatives verbal statements in making his decision to transfer from New England Life, oral modification of ERISA

plans is prohibited because under ERISA employee benefit plans must be "established and maintained pursuant to a written instrument." <u>Nachwalter v. Christie</u>, 805 F.2d 956, 960 (11th Cir. 1986) (citing 29 U.S.C. § 1102(a)(1)). "The conclusion that under ERISA oral modifications of employee benefit plans are impermissible is buttressed by the observation that Congress expressly prohibited informal written amendments of ERISA plans." <u>Nachwalter</u>, 805 F.2d at 960. Under ERISA, a plan shall provide a procedure for amending the plan and for identifying the persons who have the authority to amend. 29 U.S.C. § 1102(b)(3). By explicitly requiring that each plan specify the amendment procedures, Congress rejected the use of informal written agreements to modify an ERISA plan. <u>Nachwalter</u>, 805 F.2d at 960 (citing <u>Johnson v. Central States, Southeast and Southwest Areas Pension Funds</u>, 513 F.2d 1173, 1174-1175 (10th Cir, 1975)). The Eleventh Circuit found that reading the written agreement provision in subsection 1102(a)(1) in light of subsection 1102(b)(3)'s requirement of formal written amendments procedures necessitates a conclusion that subsection 1102(a)(1) of ERISA precludes oral modifications of employee benefit plan. <u>Glass</u>, 33 F.3d at 1347 (holding that estopple is not available for oral modifications as opposed to interpretations); <u>Nachwalter</u>, 805 F.2d at 960. Therefore, based upon the Eleventh Circuit's reading of ERISA, it is respectfully recommended that the Motion for Summary Judgment should be granted regarding Count I.

### <u>(b)The Memorandum of Understanding</u>

On December 20, 1998, Schena signed an intra-company Memorandum of Understanding (Ar. # 24). The Plaintiff argues that he relied on paragraph 4 which states "[y]ou will be given full credit at MetLife for all of your years of New England Life service," for the proposition that all of his time with New England Life would be calculated toward his MetLife retirement benefit. Schena

argues that other plan documents beside the Plan or the SPD may be controlling under ERISA.  The Defendant counters that any statements or conditions made in the Memorandum of Understanding do not change or alter the terms of the SPD/Plan itself.

Under ERISA, the SPD does not necessarily contain all of the information about a plan and the plan can be governed by documents other than the SPD.  Heffner v. Blue Cross and Blue Shield of Alabama, Inc., 443 F.3d 1330, 1343 (11th Cir. 2006).  However, documents that are mere communications and not formal plan documents do not control.  Id.  ERISA establishes what constitutes a formal Plan documents.  An SPD or plan document provides (1) a procedure for establishing and carrying out a funding policy, (2) describes . . . the operation and administration of the plan, (3) a procedure for amending the plan or for identifying the persons who have the authority to amend the plan, or (4) specifics on the basis by which payments are made to and from the plan.  Cotton v. Massachusetts Mutual Life Insurance Company, 402 F.3d 1267, 1275 n. 8 (11th Cir. 2005) citing 29 U.S.C. § 1102(b)).  "Other" documents or instruments under which a plan is established or is operated also encompasses formal or legal documents whereby the plan is managed.  Cotton, 402 F.3d at 1275 n. 8.  To constitute an SPD the document must contain all or substantially all of the categories required under 29 U.S.C. § 1022(b). Id.  Twenty nine U.S.C. § 1022(b) contains and extensive list of information that document must contain before it is considered an SPD.

The Eleventh Circuit stated that it did not believe that Congress intended to exclude every document which lacks some of the information contained in § 1022(b).  Instead, the Eleventh Circuit found that any document that a plan distributes to its participants which contained all or substantially all of the information an average participant would deem crucial to a knowledgeable understanding of his benefits under the plan would be deemed an SPD. Id.; *See* Alday v. Container Corporation of

America, 906 F.2d 660, 665 (11th Cir. 1990) (holding that a benefit summary booklet did not fulfill the requirements set out in 29 U.S.C. § 1022 and was therefore not an SPD).

In this case, the Memorandum of Understanding (Memo) did not meet the requirements to be considered a Plan, SPD or "other" document under ERISA. First the Memo was distributed to a small number of employees, those who chose to transfer from New England Life to MetLife. The only information contained in the Memo required by § 1022(b) was an eligibility statement regarding years of service with New England Life and even that paragraph was qualified by a disclaimer that any information contained in the Memo was controlled by that actual language of the Plan or SPD. (Ar. Doc. # 24). Consequently, the Memo of Understanding does not qualify as a plan document under ERISA. Thus, it is respectfully recommend the Defendant's Motion for Summary Judgment as to Count I as it relates to the Memorandum of Understanding should be granted.

*(2) Counts II & III: Whether Plaintiff can Recover if MetLife Failed to Discharge Its Fiduciary Duty Under ERISA*

One of the principle purposes of ERISA is to protect the interests of participants and beneficiaries by establishing standards of conduct, responsibility, and obligation for fiduciaries and providing for appropriate remedies and ready access to Federal Courts. Jones v. American General Life and Accident Insurance Co., 370 F.3d 1065, 1071 (11th Cir. 2004) (citing Varity Corp. v. Howe, 516 U.S. 489, 513, 116, S. Ct. 1065, 134 L. Ed. 2d 130 (1996) (quoting 29 U.S.C. § 1001(b)). "In furtherance of this general objective, ERISA section 404(a) obligates fiduciaries to discharge their duties solely in the interest of the participants and beneficiaries." Jones, 370 F.3d at 1071 (citing 29 U.S.C. § 1104(a) (internal quotes omitted)). The Eleventh Circuit has recognized that this fiduciary

status is "the highest known to law."  Jones, 370 F.3d at 1071.  It is undisputed that MetLife is the fiduciary in this case.

    The Plaintiff argues that MetLife failed in its fiduciary duty because they misled him by assuring him that all of his time at New England Life would count toward his MetLife benefits and because they failed to provide him with a copy of the SPD or Plan.[2]  The Defendant argues that the statements regarding the Plaintiff's years of service with New England Life being used to calculate his MetLife benefits were not made by plan administrators and further that had the Plaintiff requested a copy of the SPD and/or the Plan one would have been provided.  Therefore, the Defendant argues there was no breach of fiduciary duty. The Defendant also counters that relief under § 502(a)(3) is not available to the Plaintiff because his claim is available under ERISA §§ 502(a)(1) or (2).

    ERISA provides for certain civil causes of action which may be brought by ERISA plan participants or beneficiaries.  ERISA § 502(a)(1)(B) provides in pertinent part that "a civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due under the terms of the plan, to enforce rights under the terms of the plan or to clarify rights to future benefits under the terms of the plan . . . ." Katz, 197 F.3d at 1089 (citing 29 U.S.C. § 1132(a)(1)(B).  There are three distinct remedies available to a participant or beneficiary under § 502(a)(1)(B): (1) action to recover accrued benefits; (2) an action to obtain a declaratory judgment that he is entitled to benefits under the provisions of the plan contract; and (3) to enjoin the plan administrator from improperly refusing to

---

    [2]     Under ERISA, each plan participant or beneficiary must be provided a summary plan description within ninety (90) days of enrollment. Heffner v. Blue Cross Blue Shield of Alabama, Inc., 443 F.3d 1330, 1334 (11th Cir. 2006) (citing 29 U.S.C. § 1024(b)(1)(A)).  An ERISA fiduciary has an affirmative duty to provide complete and accurate information as well a duty to not misinform the plan's beneficiaries. Jones, 370 F.3d at 1072 (citing Bixler v. Central Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292, 1300-1301 (3d Cir. 1993) (quoting Ervast v. Flexible Products Co., 346 F.3d 1007, 1016 n. 10 (11th Cir. 2003).

pay benefits in the future. Heffner, 443 F.3d at 1338.  However, Congress did not provide a remedy for breaches of fiduciary obligations in the remedial provisions of ERISA found in Sections 502(a)(1) and (a)(2). Jones, 370 F.3d at 1071.

The Supreme Court in Varity Corp. v. Howe, recognized a cause of action under ERISA's Section 502(a)(3), ERISA's catchall provision, which authorizes plan participants and beneficiaries to maintain an action to obtain appropriate equitable relief to redress violations of ERISA or the terms of an ERISA governed plan. 516 U.S. at 512; Heffner, 443 F.3d at 1340.  The purpose of § 502(a)(3) is to act as a safety net offering appropriate equitable relief for injuries caused by violations of ERISA that §§ 502(a)(1) or (a)(2) do not address or adequately remedy. Varity, 516 U.S. at 512.  Therefore, the central focus of this inquiry involves whether or not the ERISA statutory framework offers a remedy for the alleged injury.  If there is an adequate remedy under the remedial provision of Sections 502(a)(1) and (a)(2),  then § 502(a)(3) does not apply. Ogden v. Blue Bell Creameries U.S.A., Inc., 348 F.3d 1284, 1285 (11th Cir. 2003); Katz v. Comprehensive Plan Group Insurance, 197 F.3d 1084, 1090 (11th Cir. 1999) (holding that oral modification of life insurance benefit did not give Plaintiff relief under § 502(a)(3) because she could seek relief under ERISA's other provisions).

As noted above, the Court's concern in Varity, was whether or not the plaintiff had an avenue of relief under ERISA's other more remedial provisions, and if so then § 502(a)(3) would not apply to the plaintiff's claim.  Jones, 370 F.3d at 1073.  In this action, the Plaintiff seeks remedy under ERISA § 502(a)(1)(B) to recover benefits due him under the terms of the MetLife Plan and the New England Life Plan, to enforce his rights under the terms of said Plans, and to clarify his rights to future benefits under terms of the Plans. (Amended Complaint,  Doc. # 24 at 2).  Because the Plaintiff has

a remedy that could be resolved by receiving a benefit under the terms of the MetLife Plan and New England Life Plans, he is not entitled to a recovery under §502(a)(3).

It does not matter if the Plaintiff's claim prevails, only that he has the opportunity to pursue the claim under one of ERISA's remedial provisions. <u>Katz</u>, 197 F3d at 1089.  The principle barring claims under § 502(a)(3) is true even if MetLife breached its fiduciary duty to the Plaintiff by failing to provide copies of the SPD, the Plan, or made misstatements regarding his years of service at New England Life.  <u>Jones</u>, 370 F.3d at 1073.  Thus, the Plaintiff is prevented from bringing a breach of fiduciary duty claim under § 502(a)(3). <u>Jones</u>, 370 F.3d at 1073 (holding that if the remedy for the plaintiff's injuries is an award of benefits under 502 (a)(1)(B), they cannot also bring claims under section 502(a)(3)); <u>Ogden</u>, 348 F.3d at 1285, 1287 (citing <u>Larocca v Borden, Inc.</u>, 197 F.3d 22, 28 (1st Cir. 2002) (holding that federal courts have uniformly concluded that if a plaintiff can pursue benefits under the plan pursuant to section (a)(1), there is an adequate remedy that bars further remedy under § 502(a)(3).  Therefore, it is respectfully recommended, the Defendant's Motion for Summary Judgment regarding  Counts II & III should be granted because the Plaintiff has no remedy under § 502(a)(3).                  _____

### (3) Count IV: Whether MetLife as a Company is Responsible for the Fiduciary's Actions

A fiduciary who becomes aware that a co-fiduciary has breached a fiduciary duty to plan beneficiaries may not escape liability by simply casting a blind eye toward the breach. <u>Willett v. Blue Cross and Blue Shield of Alabama</u>, 953 F.2d 1335, 1342 (11th Cir. 1992).  Twenty-nine U.S.C. § 1105(a) provides that a fiduciary shall be liable for a breach of fiduciary responsibility of another fiduciary if by his failure to comply with § 1104(a)(1) of ERISA he has enabled the other fiduciary to

breach or if he had knowledge of a breach and did not take action to remedy the breach. <u>McGarry v.</u>

<u>Eastern Air Lines, Inc.</u>, 1987 WL 13900 (S.D. Fla. July 6, 1987).

 The statute reads in pertinent part:

> [i]n addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable to a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> > (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
> >
> > (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
> >
> > (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a).

 Thus, in order for liability for breach of fiduciary duty by a pension plan administrator to attach to a co-fiduciary, the co-fiduciary must have knowingly participated in the breach or had knowledge of the administrators breach and made no effort to remedy the breach. <u>Chambers v. Kaleidscope, Inc.</u> <u>Profit Plan and Trust</u>, 650 F. Supp. 359, 369-370 (N.D. Ga. 1986).

 In this case, the Plaintiff fails to establish any facts that MetLife knowingly participated in a breach of fiduciary duty by failing to calculate his New England Life years of service into his MetLife benefits or to provide him a copy of the Plan or SPD. <u>See</u> <u>Justice v Bankers Trust Co., Inc.</u>, 607 F. Supp. 527, 535-536 (N.D. Ala. 1985) (holding that the Plaintiff's § 1105(a)(3) claim failed because the Plaintiff did not demonstrate a factual basis for holding the Defendant Trustee liable for failing to

notify them or take remedial action regarding the fact that Bankers Trust failed to deposit contributions into employee trust account).  Thus, it is respectfully recommended that MetLife's Motion for Summary Judgment as to Count IV should be granted.

Accordingly it is now

**RECOMMENDED:**

The Defendants Metropolitan Life Retirement Plan for United States Employees, Metropolitan Life Insurance Company, New England Insurance Company Retirement Plan & Trust, Metropolitan Life Insurance Company's (hereinafter Defendant or Met Life) Motion for Summary Judgment (Doc. # 41) should be **GRANTED.**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this   17th   day of August, 2006.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE


Copies: All Parties of Record

-16-