```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION


KENNETH R. SCHENA,

            Plaintiff,

vs.                                   Case No.  2:05-cv-249-FtM-29SPC

METROPOLITAN LIFE RETIREMENT PLAN
FOR   UNITED   STATES   EMPLOYEES;
METROPOLITAN LIFE INSURANCE COMPANY;
NEW ENGLAND LIFE INSURANCE COMPANY
RETIREMENT   PLAN   &   TRUST;
METROPOLITAN LIFE INSURANCE COMPANY,

            Defendants.
_____
```

**OPINION AND ORDER**

This matter comes before the Court on a Report and Recommendation (Doc. #52) recommending that Defendants' Motion for Summary Judgment (Doc. #41) be granted. Plaintiff filed Objections (Doc. #53), to which defendants filed a Response (Doc. #54). Plaintiff asserts that defendants must pay retirement benefits based on credit for years of service at New England Life Insurance Company, and defendants have refused to do so. The Court reviews *de novo* issues of law and matters to which an objection has been filed. 28 U.S.C. § 636(b)(1)(C); Jeffrey S. by Ernest S. v. State Bd. Of Educ. Of Ga., 896 F.2d 507, 512 (11th Cir. 1990)(quoting H.R. 1609, 94th Cong. § 2 (1976)).

I.

The material facts are undisputed and are accurately set forth in the Report and Recommendation. Plaintiff Kenneth R. Schena (plaintiff or Schena) was employed by New England Life Insurance Company (New England Life) in the Naples, Florida area beginning in 1982, first as a sales agent and then as a sales manager. In 1996 New England Life was acquired by Metropolitan Life Insurance Company (MetLife), and both companies continued to operate.

In 1998 discussions were held about Schena's voluntary intra-company transfer from New England Life to MetLife. Schena was verbally assured by senior MetLife officials and a MetLife pension expert that if he transferred to MetLife he would receive credit for all his time with New England Life for retirement computation purposes.[1]

In reliance upon such verbal assurances, on December 20, 1998, Schena signed an Intra-Company Memorandum of Understanding (Doc. #24-2, Exh. C) (the Intra-Company Memorandum). The Intra-Company Memorandum "sets forth several important considerations that will have an impact on an agent who works for a General Agent of New England Life Insurance Company who requests a transfer to become an Account Representative for Metropolitan Life Insurance Company." Among other things, the Intra-Company Memorandum stated : "You will

---

[1] Plaintiff's Objection that the Report and Recommendation did not set forth in more detail his description of the meeting (Doc. #53, p. 2, ¶A(4)) is overruled. While accurate, the factual additions plaintiff seeks are not material.

be given full credit at MetLife for all of your years of New England Life service." (Id. at ¶ 4.)  The first paragraph of the Intra-Company Memorandum had stated that signing the document would be "confirmation that you have read the document, considered the information provided and consulted any appropriate source documentation and that you accept the provisions of transfer that will apply to you."  Just above the signature line was the disclaimer (in capital letters and set forth in full in the Report and Recommendation), stating that if there was a conflict in the information in the Intra-Company Memorandum and in any publications issued by the company describing policies, compensation arrangements and plans, the terms and conditions outlined in the publications would control and would not be deemed modified by the Intra-Company Memorandum.

MetLife officials also provided plaintiff with a copy of its October 29, 1996 Procedures for Intracompany Transfers (Doc. #24, Exh. D).[2]  This document was exactly what its title suggested, and advised persons that "MetLife's benefits are very different from [New England Life's]" and "MetLife's retirement plan is also different from NEL's."  In the Summary portion, the document stated: "Account Representatives who are considering a transfer between MetLife and New England Life should take particular care to

---

[2]Plaintiff's Objections correctly point out that this document was not discussed in the Report and Recommendation (Doc. #53, p. 3, ¶5).  The Court will consider this document, although in the end the Court finds it not to add materially to plaintiff's case.

ensure that they appreciate the impact of the transfer on their benefits and other non-cash compensation. Contact your regional office for more information." Id. In the attached chart comparing New England Life with MetLife, the "Years of Service" section states in part: "Account representatives transferring to MetLife will receive full credit for their [New England Life] years of service for purposes of determining eligibility, payments, etc. of certain elements of MetLife's benefit plan."

On February 5, 1999, MetLife offered plaintiff employment as an Agency Manager in Naples, Florida effective February 15, 1999. (Doc. #24, Exh. G.) On February 8, 1999, in reliance upon the verbal and written assurances, Schena accepted the offer of employment from MetLife. (Doc. #24, Exh. G.) Absent the verbal and written assurances, plaintiff would not have accepted the transfer.[3] Schena remained employed with MetLife until he retired on May 31, 2002.

On June 14, 2001, at plaintiff's request, MetLife provided plaintiff with his estimated monthly retirement annuity benefits for retirement at two different dates in 2001; both amounts were approximately $3,000. (Doc. #24, Exh. I.) On December 3, 2001, MetLife provided plaintiff with his estimated monthly retirement annuity benefits for retirement at a date in 2003; the amount was

---

[3]The Court accepts the additional facts in plaintiff's Objections (Doc. #53, pp. 3-4, ¶¶8, 9), which were not expressly stated in the Report and Recommendation.

just over $900. (Doc. #24, Exh. J.) This latter amount did not give plaintiff credit for his years of service at New England Life.

On January 4, 2002, plaintiff faxed a copy of the Intra-Company Transfer Memorandum to MetLife with the notation that "Enclose memo upon which I based by decision to transfer to MetLife." (Doc. #24, Exh. K.) A series of e-mails were exchanged between MetLife and plaintiff concerning the calculation of the amount of the retirement benefits. (Doc. #24, Exhs. L-Q.) In a March 22, 2002 e-mail, MetLife informed plaintiff that a final decision had been made concerning his prior service: "Unfortunately all your prior service with NEP does NOT enter into the MetLife pension calculations. Your NEP service time has its own pension provisions and you will need to contact 617.578.5623 for further details." (Doc. #24, Exh. R.) An April 12, 2002, letter from MetLife supplemented the March 22, 2002 e-mail as follows:

> A comprehensive review and final determination has been completed concerning service time accrued while employed as a General Agent of New England Life Insurance. The MetLife retirement does not recognize the service time obtained as an agent of New England for pension calculation purposes. Your service as an agent with New England is recognized as continuous service time with MetLife, but not credited service. *Credited service* is the number of years of service when determining the pension amount and *continuous service* is for eligibility purposes. Your continuous time has been adjusted to reflect 10/4/82 as the date of employment, but your credited service time start date is 2/15/99.

(Doc. #24, Exh. S)(emphasis in original).

On May 31, 2002, plaintiff notified MetLife that he would retire effective immediately. (Doc. #24, Exh. V.)

On June 12, 2002, counsel for plaintiff wrote to MetLife asserting an entitlement to credit for plaintiff's years of service, pointing out that the Intra-Company Transfer Memorandum did not make the "credited service" "continuous service" distinction now being asserted on behalf of MetLife. (Doc. #24, Exh. X.) On June 14, 2002, MetLife advised plaintiff, among other things, that it was estimated his lifetime monthly pension would be $492.19. (Doc. #24, Exh. Y.) This was based on the distinction between "continuous service" and "credited service" discussed earlier. (Doc. #24, Exh. Z.) On July 29, 2002, the MetLife Plan Administrator responded to counsel's June 12, 2002 letter, asserting that the MetLife Plan did not recognize service time and compensation obtained at New England Life in its pension calculation, although such time was recognized for vesting and eligibility purposes. (Doc. #24, Exh. BB.) The Plan Administrator asserted that the Intra-Company Transfer Memorandum provided "generally for service crediting, for vesting and eligibility purposes", but did not alter or create an exception to the MetLife Plan. This was stated to be MetLife's final determination. (Doc. #24, Exh. BB.)[4]

---

[4]The Court overrules plaintiff's Objections to the extent it asserts that the phraseology of the Report and Recommendation suggests that the magistrate judge disregarded the applicable legal standard. (Doc. #53, p. 2, ¶ 2.) The Court also overrules the Objections at ¶¶ 1, 3, and 10 because the facts are not material to the issues; and overrules the Objections at ¶¶ 6, 7, 11, 12, and 13 as being argumentative and not material.

**II.**

The Amended Complaint (Doc. #24) contains four counts.[5] Pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), Count I seeks retirement benefits calculated by giving plaintiff full credit for his years of service at New England Life. This claim is based upon the verbal assurances, the written Intra-Company Transfer Memorandum of Understanding, and the Procedures for Intracompany Transfers, which plaintiff contends equitably estop defendants from not giving him full credit for the New England Life years. Count II claims that, pursuant to 29 U.S.C. § 1104(a)(1), MetLife breached its fiduciary duty to (1) refrain from making affirmative misrepresentations by (a) verbally and in writing representing to Schena that if he transferred he would be eligible to have his years of service credited for purposes of the calculation of his retirement benefits from MetLife, and (b) failing to provide complete and accurate information in response to Schena's questions about the MetLife retirement plan terms and benefits; and (2) pay retirement benefits in accordance with the verbal and written assurances. Count III alleges that MetLife breached its duty of disclosure by (1) having a Summary Plan Document (SPD) which is inconsistent with its Plan and is

---

[5]The Amended Complaint contains a number of paragraphs alleging that plaintiff was constructively discharged as a result of reverse discrimination based upon his race and gender (Doc. #24, ¶¶ 28-33). Since no such causes of action are set forth in the Amended Complaint, these allegations are not material to the ERISA claims.

insufficient to provide the notice required by statute; and (2) not providing plaintiff with copies of the Plan or the SPD until after his retirement. Count IV alleges that MetLife, as Plan administrator and fiduciary, failed to monitor the administration of the Plan and assure that the fiduciaries performed their statutory duties, in violation of its fiduciary duties under 29 U.S.C. §§ 1104 and 1105.

### III.

ERISA regulates an "employee benefit plan" or a "plan," which includes an employee pension benefit plan. 29 U.S.C. § 1002(3). An "employee pension benefit plan" is any plan, fund or program established or maintained by an employer, or by an employee organization, or both, which provides retirement income to employees. 29 U.S.C. § 1002(2)(A)(ii). It is undisputed that the MetLife plan at issue in this case is an "employee pension benefit plan," and therefore is an "employee benefit plan" subject to the provisions of ERISA. Count I claims entitlement to retirement benefits under the MetLife plan calculated by giving plaintiff credit for his years of service at New England Life.

Plaintiff objects to the Report and Recommendation because it failed to treat the Intra-Company Memorandum and the Procedures for Intracompany Transfers collectively as a Summary Plan Document, or at a minimum, consider these to be "other pertinent documents" which, under the circumstances of this case, preclude enforcement

of the literal terms of the MetLife plan. (Doc. #53, p. 6.) For the reasons set forth below, the Court overrules these objections.

"Every employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). An ERISA "plan" can consist of multiple documents. E.g., Heffner v. Blue Cross & Blue Shield of Ala., Inc., 443 F.3d 1330, 1341 (11th Cir. 2006). A "plan document" refers to the written document which sets forth the requirements of every employee benefit plan under 29 U.S.C. § 1102(b), i.e., provides a procedure for establishing and carrying out a funding policy, describes the procedures for the operation and administration of the plan, provides a procedure for amending the plan and for identifying the persons who have authority to amend the plan, and specifies the basis on which payments are made to and from the plan. Cotton v. Massachusetts Mut. Life Ins. Co., 402 F.3d 1267, 1274 n.8 (11th Cir. 2005). A "summary plan description", which is required under 29 U.S.C. § 1022(a), is a document which contains all or substantially all of the twelve categories of information required by 29 U.S.C. § 1022(b). Cotton, 402 F.3d at 1274 n.8. "Other instruments under which the plan is established or operated" within the meaning of 29 U.S.C. § 1024(b)(2) encompasses formal or legal documents under which a plan is set up or managed. Cotton, 402 F.3d at 1274 n.8.

Neither the Intra-Company Memorandum of Understanding (Doc. #24, Exh. C) nor the October 29, 1998 Procedures for Intracompany

Transfers (Doc. #24, Exh. D), whether considered individually or collectively, fulfill the requirements for plan descriptions, summary plan descriptions, or "other documents" summarized above. E.g., Alday v. Container Corp. Of Am., 906 F.2d 660, 665-66 (11th Cir. 1990). Therefore, this is not a situation where there is an inconsistency between the plan and an SPD or other plan documents, and cases discussing such a factual situation are inapplicable.

Count I asserts, nonetheless, that the verbal assurances and these two written documents equitable estop MetLife from denying plaintiff credit for his New England Life service in the calculation of his retirement benefit. The applicable legal principles are well established in the Eleventh Circuit. Because the federal statute requires that an employee benefit plan be "established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), oral modifications to or amendments of such plans are impermissible, and the federal common law doctrine of estoppel cannot be used to effect such an oral modification or amendment. Nachwalter v. Christie, 805 F.2d 956, 960 (11th Cir. 1986). Similarly, informal written agreements may not effect a modification to or amendment of an employee benefit plan. Alday, 906 F.2d at 665-66. On the other hand, a narrow federal common law claim for equitable estoppel may be applied where (1) the provision of the employee benefit plan at issue is ambiguous such that reasonable persons could disagree as to its meaning or effect, and (2) representations are made to the employee involving an oral

-10-

interpretation of that provision of the plan (as distinct from a modification of the plan). Kane v. Aetna Life Ins., 893 F.2d 1283, 1286-87 (11th Cir.). The rule from Kane only comes into play where the term of the plan is ambiguous and where the communications constitute an interpretation of that ambiguity. Alday, 906 F.2d at 666. See also Novak v. Irwin Yacht & Marine Corp., 986 F.2d 468, 472 (11th Cir. 1993); Katz v. Comprehensive Plan of Group Ins., Alltel, 197 F.3d 1084, 1090 (11th Cir. 1999); Jones v. American Gen. Life & Accident Ins. Co., 370 F.3d 1065, 1069-70 (11th Cir. 2004).

Here, the terms of the plan were not ambiguous. (Report and Recommendation, Doc. #52, pp. 7-8.) Under well-established Eleventh Circuit law, the oral and written representations cannot modify or amend the ERISA plan, and do not create ambiguity where none existed in the plan. The Court overrules any objection not specifically addressed, and accepts the recommendation that judgment be granted in favor of defendants as to Count I.

### III.

Plaintiff has not objected to the recommended judgment as to the other counts of the Amended Complaint. After full review, the Court accepts these findings, conclusions, and recommendations.

Accordingly, it is now

**ORDERED:**

1.  The Court **accepts and adopts** the Report and Recommendation (Doc. #52), as supplemented by this Opinion and Order.

2.  Defendants' Motion for Summary Judgment (Doc. #41) is **GRANTED**.

3.  The Clerk of the Court shall enter judgment in favor of defendants as to all counts of the Amended Complaint, and plaintiff shall take nothing.

4.  The Clerk is further directed to terminate any remaining deadlines as moot and close the case.

**DONE AND ORDERED** at Fort Myers, Florida, this __16th__ day of November, 2006.

_____
JOHN E. STEELE
United States District Judge

Copies:
Hon. Sheri Polster Chappell
Counsel of record